# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

GEORGIA GRANT-WALTON,
*Personal Representative to the Estate of Taylor Walton*,

    Plaintiff,

v.

MONTGOMERY COUNTY BOARD OF EDUCATION,
KAREN PHILBIN and
JEFFREY RABBERMAN,

    Defendants.[1]

Civil Action No. TDC-17-2339

## MEMORANDUM OPINION

Plaintiff Georgia Grant-Walton ("Plaintiff"), in her capacity as the personal representative to the estate of her daughter, Taylor Walton ("Walton"), has brought this action against the Board of Education of Montgomery County, Maryland and two physical education teachers at Gaithersburg High School, Karen Philbin and Jeffrey Rabberman ("the Individual Defendants"), alleging gross negligence; negligent selection, hiring, training, and supervision; a common law survivor action; and a claim pursuant to 42 U.S.C. § 1983 for a violation of Walton's rights under the Fourth Amendment to the United States Constitution. Presently pending before the Court is the Individual Defendants' Motion for Partial Dismissal. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local

---

[1] The original Complaint named "Gaithersburg High School" as a Defendant, but that party is not named in the Amended Complaint. *Compare* Compl. at 1, ECF No. 1, *with* Am. Compl. at 1, ECF No. 12. The Court directs the Clerk to remove Gaithersburg High School as a Defendant.

R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Walton, a minor at the time of the relevant events, was a student at Gaithersburg High School ("GHS") in Gaithersburg, Maryland. Walton suffered from asthma, an inflammatory disease of the airway which can be exacerbated by air pollutants or exercise. Asthma can result in an anaphylactic reaction causing swelling of the membranes lining the airway which, if not immediately treated through the use of an inhaler, can result in death. When Walton was first enrolled at GHS in August 2015, school officials were informed of Walton's asthma, and each of her teachers received a copy of her emergency treatment plan.

In October 2015, Walton suffered an anaphylactic reaction, also known as an asthma attack, while in her physical education class, in the presence of "her Gym Teacher." Am. Compl. ¶ 12, ECF No. 12. Walton was able to control the attack through the use of her inhaler.

On November 30, 2015, Walton experienced another asthma attack in her gym class, taught by Philbin. Walton informed Philbin that she was having trouble breathing as a result of the attack and requested permission to leave the class to retrieve her inhaler from her gym locker. Philbin denied the request. A short time later, Walton informed Philbin that her breathing difficulties were continuing and again requested permission to get her inhaler. Philbin again denied the request. Finally, in the midst of severe breathing difficulties, Walton told Philbin that she was leaving class to get her inhaler. Although both Philbin and Rabberman, who was also present, observed Walton leave the gymnasium, neither teacher went with her to get the inhaler or instructed another student to accompany Walton.

Walton was found unconscious on the floor outside the gymnasium by an unnamed school employee. That employee notified a school nurse, who began administering artificial respiration to Walton and called for emergency medical personnel. All attempts to revive Walton were unsuccessful. She was pronounced dead at Shady Grove Hospital later that day.

## DISCUSSION

In their Motion to Dismiss, the Individual Defendants argue that Plaintiff has failed to state plausible claims against Philbin or Rabberman of (1) gross negligence (Count I); and (2) a violation of Walton's Fourth Amendment rights (Count III).

### I. Legal Standard

The Motion seeks dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. Gross Negligence

Count I asserts a claim against the Individual Defendants for gross negligence based on their alleged failure to allow Walton to leave the gymnasium or otherwise assist her during the medical emergency. Under Maryland law, gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md.

3

2007) (quoting *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre*, 935 A.2d at 717 (*quoting Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). An individual acts with gross negligence when that person "inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* Under this standard, courts have found gross negligence adequately pleaded in cases in which a plaintiff has alleged that a defendant has displayed utter indifference or thoughtless disregard to the rights of others by failing to take certain actions to address clear warning signs so as to prevent the harm. *See, e.g., Doe v. Bd. of Educ. of Prince George's Cty.*, 888 F. Supp. 2d 659, 669-70 (D. Md. 2012) (finding that allegations that the defendant school district was aware that a classmate repeatedly engaged in sexual harassment of the plaintiff, refused to act in response to the plaintiff's complaints, and assigned the classmate to the plaintiff's classroom the following school year stated a cognizable claim for gross negligence).

Viewing the allegations in the light most favorable to the plaintiff, as is required at this stage, the Court finds that Plaintiff has sufficiently alleged a claim of gross negligence against the Individual Defendants. Here, Walton had asthma, a condition known to lead to severe breathing difficulties that could result in death, and GHS officials and Walton's teachers, including Philbin and Rabberman, had been made aware of her condition to the point that there was an emergency treatment plan to be implemented in the event of an asthma attack. She had previously suffered an asthma attack in the presence of her gym teacher that was controlled by an inhaler. Despite having this knowledge, Philbin refused two specific requests by Walton to leave

4

class to get her inhaler to address breathing difficulties. When Walton then informed her that she was going to leave to get it, neither Philbin nor Rabberman took any steps to ensure that she was able to retrieve it and alleviate her distress. The fact that Walton was then found unconscious near the gymnasium shortly after leaving the class supports an inference that her condition was so severe that her need for medical attention would have been clear to them. Thus, the Individual Defendants were aware of the serious health risk to Walton, knew specifically how it could be treated, yet took no steps to assist Walton. Moreover, Philbin twice prevented Walton from accessing her inhaler as required by law.

While the Amended Complaint does not describe whether Walton's distress would be obvious to the Individual Defendants, this question is properly resolved on the basis of the facts rather than the pleadings. *See Newell v. Runnels*, 967 A.2d 729, 763-65 (Md. 2009) (noting, in the context of determining whether a state actor was subject to qualified immunity, that the determination of whether a state official acted with "malice or gross negligence" was a question to be resolved by a trier of fact). Under these circumstances, Plaintiff has sufficiently alleged that the Individual Defendants deliberately failed to carry out a known duty, in reckless disregard of the consequences to Walton's health and safety, with utter indifference to her rights. *See Barbre*, 935 A.2d at 717.

The case law cited by the Individual Defendants does not alter this conclusion. In *Wells v. State*, 642 A.2d 879 (Md. Ct. Spec. App. 1994), in which a nine-year-old girl was beaten to death by her mother's live-in boyfriend, the court found no basis to support a claim of gross negligence by social workers who were aware of the long history of abuse of both children by the live-in boyfriend, in part because the social workers had investigated multiple reports of abuse with inconclusive results. *Id.* at 883-85. In *Wright v. Carroll County Board of Education*,

No. 11-3103, 2012 WL 1901380 (D. Md. May 24, 2012), in which the court dismissed gross negligence claims against school officials who had failed adequately to prevent or respond to the bullying of a special-needs student by another student, school officials had been informed that the bullied student "had expressed fears of reporting to school," and once he was assaulted they did not inform all teachers and relevant staff of the incident, but there was no specific allegation that school officials were aware that a particular attack was imminent, or what should have been done to prevent the attacks. *Id.* at *2, *13, *15. Unlike in *Wells* and *Wright*, the Individual Defendants were not just aware of a serious risk to a child, they were faced with a specific, imminent threat to the child's life, were aware of a specific treatment that would have resolved that threat, but deliberately chose to prevent the child from obtaining that treatment. The Court therefore finds that the Amended Complaint has plausibly stated a claim for gross negligence under Maryland law. The Motion will be denied as to Count I.

### III. Fourth Amendment

In Count III, Plaintiff alleges that the Individual Defendants violated Walton's Fourth Amendment rights by intentionally denying her permission to leave the gymnasium to retrieve her inhaler. Although not specifically stated in the Amended Complaint, the Court construes this claim as alleging an unlawful seizure of Walton under the Fourth Amendment. The Individual Defendants argue that the Amended Complaint fails to allege a plausible Fourth Amendment violation because denying a student permission to leave class is not a "seizure" within the meaning of the Fourth Amendment. They also argue that Walton was not subjected to a Fourth Amendment seizure because the fact that she eventually left the class without permission from Philbin demonstrates that she felt that she was free to leave the gymnasium.

Students "do not shed their constitutional rights . . . at the schoolhouse gate," including their right under the Fourth Amendment to be free of unreasonable seizures. *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969); *see Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir. 2004). To decide whether a Fourth Amendment violation has occurred, courts first consider whether an individual has been "seized," and then whether the seizure was objectively unreasonable under the circumstances. *See Schultz v. Braga*, 455 F.3d 470, 480 (4th Cir. 2006); *Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051, 1056 (10th Cir. 2012) (considering whether a seizure occurred and then whether the seizure was reasonable in a school context); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (same). For the reasons set forth below, the Court concludes that Walton was not subjected to a seizure within the meaning of the Fourth Amendment when Philbin denied her permission to leave class.

Ordinarily, a Fourth Amendment seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The restraint on an individual's movement must be the result of intentional action by the state actor. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). However, "we must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish." *Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1250-51 (10th Cir. 2008). "[U]nemancipated minors lack some of the most fundamental rights of self-determination— including even . . . the right come and go at will." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995). Applying the "free to leave" standard as written would nullify this test for every school student because compulsory attendance means that they are, by definition, not free to leave during school hours. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) (stating that

7

"children sent to public school are lawfully confined to the classroom"); *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995) (stating that "the law compels students to attend school, which deprives them of a level of freedom of mobility").

The United States Court of Appeals for the Fourth Circuit has not decided whether the "free to leave" standard applies in the school context, such that a teacher's denial of permission to leave a classroom would be a Fourth Amendment seizure. In *Couture*, however, the United States Court of Appeals for the Tenth Circuit articulated a heightened standard for a Fourth Amendment seizure in the special context of a school. *Couture*, 535 F.3d at 1251. The court held that in a school setting, "the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance" to qualify as a Fourth Amendment seizure. *Id.* This standard has been adopted by courts around the nation in situations, such as this case, where the school's conduct is motivated by a desire to maintain order in the classroom as opposed to investigating a violation of criminal laws or school rules by an individual student. *See Ebonie S.*, 695 F.3d at 1056-57 (applying *Couture* and holding that school's use of a special desk that limited a student's movement for disciplinary purposes and to prevent the student from disrupting the classroom was not a seizure); *Crochran ex rel. Shields v. Columbus City Schs.*, 278 F. Supp. 3d 1013, 1021-22 (S.D. Ohio 2017) (applying *Couture* and holding that the use of a restraining garment known as a "body sox" on a special-needs student, where the student voluntarily put on the garment and his movements were not significantly restricted, was not a seizure). Even in the context of an investigation for drugs, a court has held that under the heightened standard of *Couture*, an order that all students remain on the football field while the police used dogs to search the school for drugs did not constitute a Fourth

Amendment seizure of the students. *Doran v. Contoocook Valley Sch. Dist.*, 616 F. Supp. 2d 184, 193 (D.N.H. 2009).

Although other courts have referenced the "free to leave" standard in finding Fourth Amendment seizures without accounting for the special context of a school, the restraints imposed in those cases clearly exceeded the restrictions inherent in everyday, compulsory attendance. *See Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005) (holding, before *Couture*, that confining a student in a small office for two hours while a uniformed police officer questioned her and threatened arrest was a seizure); *Doe ex rel. Doe v. Hawaii Dept. of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) (holding that a teacher effected a Fourth Amendment seizure by taping an eight-year-old student's head to a tree for five minutes).

Upon consideration of the case law, the Court concludes that application of the traditional "free to leave" standard to the school context is not appropriate because it does not take account of the inherent restrictions on student movements in a school. To apply that standard would be to render any instance in which a teacher tells a student to enter a classroom when the bell rings, rather than linger in the hallway, a constitutionally significant action. The Court therefore concludes that the proper standard for determining if a student's Fourth Amendment right against unreasonable seizure has been violated is whether the restraint on the student's movement "significantly exceed[s] that inherent in every-day, compulsory attendance." *Couture*, 535 F.3d at 1251.

Applying that standard, the Court finds that Philbin's denial of permission for Walton to leave gym class was not a Fourth Amendment seizure. The requirement of a teacher's permission to leave class, whether to go home early, use the restroom, or any other purpose, is the paradigmatic manifestation of compulsory attendance laws. Public school students around

9

the country, from kindergartners to 18 year-olds in high school, must all request permission to leave the classroom. The United States Supreme Court has noted the "custodial" power that teachers have over students which "permit[s] a degree of supervision and control" over their movements. *Vernonia Sch. Dist. 47J*, 515 U.S. at 655. While physical restraint is not always necessary to establish a seizure in a school setting, *see, e.g., Jones*, 410 F.3d at 1226, Philbin's act of verbally denying Walton permission to leave class did not "significantly exceed that inherent in every-day, compulsory attendance." *Couture*, 535 F.3d at 1251. Thus, the Court finds that the allegations in the Amendment Complaint, even if true, do not establish that Walton was subjected to a Fourth Amendment seizure. In reaching this conclusion, the Court does not find that Philbin's denial of Walton's request to leave class to get her inhaler was a reasonable action, only that it is not appropriately considered through the lens of the Fourth Amendment.

The Court notes that this conclusion differs from the result in a factually similar case, *Estate of Massey v. City of Philadelphia*, 118 F. Supp. 3d 679 (E.D. Pa. 2015). In *Massey*, the plaintiff alleged violations of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause when a sixth grade student who suffered an asthma attack died on the way to the hospital after she had been kept at school by her teacher, without contacting emergency medical personnel. *Id.* at 685-86. The court allowed both constitutional theories to proceed. *Id.* at 689, 693. In ruling that the plaintiff had stated a plausible claim that Massey had been subjected to a Fourth Amendment seizure, the court applied the "free to leave" standard and found that a reasonable sixth grade student would not feel free to leave the classroom. *Id.* at 689. In doing so, however, *Massey*, even while acknowledging that "special consideration" should be given to a school's "goals and responsibilities" in assessing whether a seizure was reasonable, did not consider the *Couture* standard for determining whether an action constitutes a seizure in the first

place, nor did it explain how the "free to leave" standard could be reconciled with the general need to enforce compulsory attendance at school in general or in specific classes in particular. Indeed, under the "free to leave" standard, not only was the asthmatic student subject to a Fourth Amendment seizure, but every other student in that classroom necessarily was as well. The Court therefore declines to follow *Massey*. Because Philbin's actions, even if unreasonable, did not constitute a seizure under the Fourth Amendment, the Court will grant the Motion to Dismiss as to the Fourth Amendment claim.

### IV. Supplemental Jurisdiction

Having dismissed the only federal claim in the Amended Complaint, and noting that diversity jurisdiction is inapplicable because the parties are not citizens of different states, *see* 28 U.S.C. § 1332 (2012), the Court must consider whether it retains jurisdiction over this case. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (stating that a court has a "duty to inquire, *sua sponte*, whether a valid basis for jurisdiction exists, and to dismiss the action if no such ground appears."). Up to now, the Court has had subject matter jurisdiction over the state law claims in the Amended Complaint because under the doctrine of supplemental jurisdiction, a federal court may exercise jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Where this case has yet to proceed beyond a motion to dismiss, it does not appear to have reached the point that judicial economy and fairness to the litigants would warrant retention of federal jurisdiction over the case. At the same time, the Court recognizes that other federal courts have found federal interests implicated when children

with asthma are denied access to healthcare at school. *See, e.g.*, *Massey*, 118 F. Supp. 3d at 689, 693 (denying a motion to dismiss Fourth and Fourteenth Amendment claims); *Taylor v. Altoona Area School District*, 513 F. Supp. 2d 540, 573-75 (W.D. Pa. 2007) (declining to dismiss a Fourteenth Amendment due process claim arising from the death of a student who was directed by a teacher to remain in the classroom during an asthma attack). Accordingly, before deciding whether to retain supplemental jurisdiction over the case, the Court will provide the parties with an opportunity to offer views on the issue.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Defendants' Motion is GRANTED as to Count III. The Motion is DENIED with respect to Count I. The parties will be ordered to show cause within 14 days why this Court should or should not retain supplemental jurisdiction over the remaining claims.

Date: May 30, 2018

THEODORE D. CHUANG
United States District Judge